Good morning everyone and welcome to the 7th circuit as we continue our remote arguments. A word for all counsel is that if we do encounter technical difficulties, just let us know we've been able to work those out and we will not hold those kinds of difficulties against your time limits. Our first case for argument today is Edgar Magana Ayala against the acting Attorney General Appeal Number 20-2792. We'll hear first from Mr. Heiderscheid for petitioner. Thank you, your honor. Good morning learned justices of this panel. Good morning to the council representing the government in this matter and to anyone who might be experiencing the argument on YouTube either via audio or video. The court. My name is John Heiderscheid and I represent the respondent petitioner for review in this matter, Edgar Magana Ayala. The review concerns the denial of a request for deferral deferral of removal under the conventions against torture. Regulations of the convention against torture provide no person may be removed to a country where it is more likely than not that person will be subjected to torture. The applicant must establish a substantial risk of torture to qualify for protection and reviewing denials of deferral under chat requests. This court has admittedly a very deferential standard. No mathematical provision for how exactly a decision must be made, but a prediction must be made about what is more likely than not that the petitioner responded. In this case, my client will be tortured with the acquiescence of government officials as returned in this case to Mexico. With all the parole cases, my client has a serious or significant conviction in his background, which made him ineligible for withholding and so deferral is my application that's before this court now. In 2006 my client was convicted of cocaine with intent to distribute chart under Illinois law. In 2013 before his time before his 30 days to appeal had finished an immigration judge in the Cleveland immigration court ordered him removed to Mexico and he was physically removed to Mexico. Between his removal in 2013 and his return to the United States in 2015 described as an odyssey in avoiding substantial harm death or torture at the of two separate cartels in Mexico cartel Jalisco new generation and cartel. First to Mexico member of a local Plaza, which is a group working under a cartel to distribute drugs. And in his grandmother's home and told him he believed that. My client was selling drugs on the home. That needed to stop and it needed to happen under CJ NGS. My client relocated to a cousin shop. He was continued to be persecuted by CJ NG that followed him there. They told him if you sell methamphetamine for us, we will harm you. And so my client began extorted Lee selling methamphetamine for CJ NG. After he began doing that the person who approached him with CJ NG came up to February of 2015. Drove him out to a ranch with a colleague. I guess you would call it of his. Gone at his head fired it inches away from his head blowing out the window of the back panel car where my client was sitting. Brought out of the car and all of this was testified to credibly as the immigration judge found my client then got out of the car was so kneel down at a gun pointed at his head. Be his last moments on Earth. And turn the gun over to the other person who was there and said execute my client Edgar McGonagall. Reason the person who was with this cartel individual did not pull the trigger that day. He didn't want to do it. My client at the ranch to walk himself home on separate incidents after that in February of 2015 the same individual Leo Gonzalez. Came to my client at his grandmother's residence and shot gunshots at him. And then on a second occasion shot gunshots at him outside of his cousin's home when his cousin was present. Mr. Heidercheit. Yes, Your Honor. You've described these terrifying incidents as soon as you say the immigration judge credited Mr. McGonagall as testimony about that. But those weren't the that's not why she denied Withholding under under the CAT I wonder if you could address questions about relocating the ability to relocate within Mexico and whether this was anything more than a private feud. Say that my my concern in reading your argument is that It would seem to mean that if we were to accept it that the United States would, in essence, become a safe haven for drug cartel members or For people involved in personal feuds Over who's seeing who's sister. Thank you, Your Honor, for that. And I recognize the importance of that. And that's an issue that this court and many courts are always concerned with. As I read the judge's ruling. She relied primarily on JFF, which was a BIA case and Barry, which was a Seventh Circuit case. Well, my view were an opposite to the situation presented to the judge on record. In terms of, and I see I'm coming up on the close of the argument in Maine. So I'll just try to provide this briefly. With regards to relocation in Mexico. My client testified that he had tried relocation within Mexico multiple times. He was discovered by CJ NG. He testified that he had no resources beyond where he was living with there in Mexico to relocate he hadn't been to Mexico City. And I think if if the court is able to take a look at the entirety of the transcript. The proceedings where my client testified and the evidence that was submitted. There's no evidence on record submitted, in my opinion, that the judge could have drawn the inference that he could relocate to Mexico. Found himself in the crosshairs of CJ NG and Sinaloa and this idea or this business about, you know, he was dating Leo Gonzalez's girlfriend in his testimony. He denied dating Leo Gonzalez's girlfriend. And it was early. Oh, Gonzalez was a member of CJ NG who engaged him to extort and sell methamphetamine. Under CJ NG's umbrella. And that would be the additional basis for when Sinaloa came in and cleaned up the cartel later. Because of his affiliation with CJ NG, it put him in the crosshairs of Sinaloa too. My argument time is winding down and I did reserve, I believe, three minutes for rebuttal. So unless there are other questions, I would ask to stop here and reserve the remainder of my time for rebuttal. All right. For the government, Ms. Zayden. Thank you, Your Honors. May it please the court. My name is Christina Zayden and I represent the Attorney General of the United States. Our position is that substantial evidence supports the agency's determination in this case that Mr. Magana did not establish his eligibility for Convention Against Torture Relief. And we respectfully ask the court to deny the petition for review. There were five findings in this case by the agency and Mr. Magana's opening brief challenged three of those findings. Specifically, Mr. Magana's opening brief waived any challenge to the finding that his likelihood of torture in Mexico was speculative because it was based on an unproven chain of suppositions with regard to the events that he feared would take place. And as for the second finding that Mr. Magana waived, he also waived any challenge to the agency's finding that country conditions evidence was insufficient to meet his burden of an individualized fear of torture. I do want to very quickly clarify something that opposing counsel said. He mentioned that Mr. Magana, when he was removed previously, was removed before his 30-day appeal period expired. And there is a waiver of appeal, excuse me, in the DHS record in this case on pages 4 and 5. That waiver was put in place before he was removed. And so moving on, moving back to the present, to the present though. Yes. Can I ask you a question? Sure. Does CJNG's umbrella of drug distribution network extend into the United States? I know the Cyanola Cartel does. Does CJNG also extend into the United States? Your Honor, there is an article here in the record on page 326 that indicates that, excuse me one moment, Your Honor, with the court's indulgence. It says here that the article documented CJNG operations in the United States on the top of page 327. Thank you. I'm sorry, Your Honor, can you repeat that? Thank you. You can continue. Thank you. Okay. Yes. Okay. So with regard to the other three challenges that Mr. Magana's brief did assert, the brief challenged the agency's findings that internal relocation was a way for Mr. Magana to mitigate his risk of torture. It challenged the probative value that the agency assigned to Leo Gonzalez's attacks against Mr. Magana and also challenged whether the evidence showed that the government would acquiesce or consent to Mr. Magana's torture. And so with regard to internal relocation, the evidence here shows that Mr. Magana internally relocated twice within Mexico before he returned to the United States. And opposing counsel mentioned that CJNG found him both of those times when he relocated, but actually Mr. Magana was working for CJNG. So he it wasn't so much that he found that they found him, but that he continued to work for CJNG both times that he moved within Mexico. And so there's Mr. Magana testified in this case that CJNG and the Sinaloa cartel, both cartels, do not operate throughout the entirety of the country. That's pages 206 to 207. He testified that the Sinaloa cartel controls the northern border and that CJNG, or excuse me, operates along the northern border and that CJNG operates within southern Mexico. And so in this case, we would ask the court to find that substantial evidence supported the agency's findings that Leo Gonzalez's attacks were based on a personal feud between himself and Mr. Magana, just as substantial evidence in the record shows. As this court noted, these facts in this case, while as, excuse me, as Your Honor, Judge Hamilton noted, the facts in this case are not really distinguishable from facts that could be present in the cases of really any cartel member that may seek safe haven in the United States. Ms. Ziden, do you think we obviously have a very deferential standard of review here, but if an immigration judge had looked at this record and had said, this is enough for relief under the Convention Against Torture, do you think that would withstand scrutiny? I think that in this case, that this court has required much more proof in these types of cases or has expected more proof in cases where it has granted petitions. That's not really my question. My question in essence is, could this have come out the other way in the agency, do you think, on this record within the bounds of the law? In this case, I don't think that that would necessarily be supported by the evidence. If it did come out the other way, then I think that the substantial evidence is met, that the substantial evidence standard is met. But in this case, there's so little evidence as far as whether the record backs up Mr. Magana's fears. In this case, also I do want to quickly mention the agency found that substantial evidence supported the finding that the government would not acquiesce to Mr. Magana's torture. And so Mr. Magana in his brief mentioned that he had been arrested before by Mexican authorities while he was in Mexico. And our position is that arrest appeared to be based on a legal premise. And in any case, there were no charges. He said that he was arrested whenever a stabbing happened outside of a location where he was sitting and that some drugs were found in a vehicle outside of that location as well. And so that doesn't show necessarily that the government would acquiesce to torture. That's just an arrest for legal reasons. And I see that my time is very close. If the court has no further questions, I'll quickly wrap up. All right. And so we would just we would ask the court to deny the petition for review based on substantial evidence. Thank you very much. Rebuttal. Mr. Thank you, Your Honors. If I could pick one of the many cases that have come down from the circuit to compare it to and what I think the situation is most like, I would report to a Razabal, which is cited in our brief. I think the immigration judge here went to painstaking lengths to perfectly view certain aspects of this record in a nation of one another and did not engage in the appropriate review, which is to look at all of the evidence selectively. The question about whether this record under a substantive evidence test would be able to affirm a grant of CAT, absolutely it would. When we look at the record that was provided and the government didn't really provide anything except very minimal cross-examination where my client had relocated. And I want to decide on this point out here is that the reason that he would not have been in danger of persecution when CJ found him is he was still technically extorted into working for them. He's pushing drugs for them. So the idea that, you know, that this dispute between Leo Gonzalez and one other person because of a dating relationship, in my mind, looks at this record far too much in isolation. But if we look at some of what was provided and not contradicted, let's talk about the 2018 Human Rights Report. The 2018 Human Rights Report found impunity, unlawful killing, forced disappearances. In 2015, in Tien Huato Michoacan, a shooting conducted by federales that executed 22 people and planted evidence. The question about whether CJNG has infiltrated the United States, of course they have. It's been so bad that the DEA referred to them as a clear and present danger. These were all documents provided to the immigration judge that for whatever reason were ignored and overlooked. And I think the holding under a Razabelle and the fact that if you look at JFF and look at Barry, they're so factually distinctive. It would be well within this court's right, even under a deferential test, to reverse the IJ and institute a grant of deferral or at least a reconsideration of this record. Understanding of why the decision was made. All right. Thank you very much, counsel. The case will be taken under advisory.